The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The employee is Curtis M. Goforth, Sr.
2. The employer is Carolina Steel Corporation.
3. The carrier at risk is Liberty Mutual Insurance Company.
4. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer and the employee relationship existed between the employer and the employee on or about April 14, 1994, the date of the alleged compensable injury reflected on IC File Number 432785.
5. A Form 21 was executed and approved by the North Carolina Industrial Commission on August 11, 1994.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
* * * * * * * * * * *
FINDINGS OF FACT
1. Plaintiff, who currently lives with his mother, is a 49 year old divorced male with two minor children. He has never received any kind of vocational or technical training and quit school after failing the tenth grade, but functions well below that level in all academic areas and requires assistance in filling out job applications because of his resulting difficulty reading and writing. At age 20 plaintiff entered the Army. He has thirty years of experience as an auto-mechanic and all his prior work experience has involved manual labor, including working as a painter and warehouseman for defendant-employer, working five and a half years as a cable subcontractor installing cable, maintenance work, working as a heavy equipment mechanic and auto-mechanic; however, because of the permanent back injury sustained is limited to sedentary work not requiring him to lift within excess of seven pounds or engage in any activity on a repetitive basis and allows him to frequently alternate bodily positions from sitting to standing.
Many of the sedentary jobs potentially available, however, require a high school education or an equivalent GED, which plaintiff does not have. His extensive criminal record would also likely exclude him from a number of security jobs, which may include sedentary ones within his physical limitations. Thus, for all the foregoing reasons plaintiff is extensively limited in his employment opportunities.
2. He initially became employed by defendant-employer in 1991 and worked as a spray painter and in other capacities in the premises warehouse requiring the type of heavy lifting, pushing and pulling prohibited by the permanent April 14, 1994 back injury giving rise hereto.
3. On the last mentioned date plaintiff was filling in for an absent employee cleaning steel bridge girders. As he was standing on his tiptoes attempting to rake some steel shot off the top of one of these same steel bridge girders plaintiff sustained a disc herniation at the T8-9 level of his thoracic spine resulting in the admittedly compensable disabling back injury that was subject of the prior Industrial Commission Award herein and pursuant to the same Award has since continued to receive weekly compensation benefits except for the two periods from June 2, 1995 to June 18, 1995 and from October 16, 1995 to October 21, 1995 when the same benefits were justifiably temporarily suspended by Administrative Decisions and Orders of Special Deputy Commissioner Amy L. Pfeiffer following separate Form 24 hearings because of plaintiff's failure to cooperate with reasonable vocational rehabilitation efforts.
4. After initially being treated at Prime Care, plaintiff was referred to an orthopedic surgeon, Dr. Rodney Mortonson. Dr. Mortonson attempted a conservative course of treatment, including restricted activity, multiple medications, physical therapy and a TENS unit, which did not result in any real improvement in plaintiff's condition and as a result subsequently referred him to a neurosurgeon, Dr. Ernesto Botero of Guilford Neurological Associates. Dr. Botero also attempted a conservative course of treatment initially but, when plaintiff's condition did not improve and a diagnostic MRI confirmed his thoracic disc herniation, recommended he undergo an anterior thoracic discectomy, which involved entering through plaintiff's abdominal area rather than his back and a resulting risk of paralysis. Under the foregoing circumstances it was not unreasonable for plaintiff to decline surgery.
5. Since Dr. Botero's recommended surgery the extruded disc material at the involved T8-9 level has desiccated or dried out resulting in the disc regressing and plaintiff developing degenerative arthritic changes, or spondylosis at the same level, which is no longer amenable to the type of surgery Dr. Botero recommended.
6. By November 4, 1994 when Dr. Botero released him from his care plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the April 14, 1994 thoracic disc injury giving rise hereto, at which time he sustained a fifteen percent permanent partial disability from the same injury manifested by the back pain and bilateral leg numbness he continues to experience requiring him to regularly use a self-prescribed cane for stability and because of his permanent back injury is only capable of sedentary work within the limitations described in Finding of Fact No. 1 hereinabove.
7. As a result of his incapacitating symptoms on March 21, 1996 plaintiff sought further medical treatment from one of Dr. Botero's associates, Dr. Mark Roy, who recommended a course of physical therapy to improve his strength and endurance, which did not provide any significant lasting relief.
Plaintiff has also been seen for independent medical evaluations by Dr. Albert K. Bartko and Dr. Steven S. Glazier.
8. In March of 1995 defendant-carrier assigned a vocational rehabilitation counselor to plaintiff's case, Amanda Coble, in an attempt to assist him in obtaining the type of sedentary work required by his permanent back injury and in June of that same year assigned another vocational rehabilitation counselor, Dr. Joyce Wildasin, and they worked with him until at least the end of November of 1995. Other than the two previously described periods from June 2, 1995 to June 18, 1995 and from October 16, 1995 to October 21, 1995 when the compensation benefits due under the Industrial Commission's prior Award were justifiably temporarily suspended by Administrative Decisions and Orders of Special Deputy Commissioner Amy L. Pfeiffer following separate Form 24 hearings because of his failure to cooperate with reasonable vocational rehabilitation efforts; plaintiff has at least minimally complied with those efforts through at least November 30, 1995 by regularly attending Job Clubs, by making employment applications and attending job interviews and in so doing has made a reasonable effort to find suitable alternate sedentary work; however, to date no jobs have been offered him. Although at one point Dr. Bartko did approve a potential job at a Texaco Station; the same job was not available and even if it had been, required physical activities outside of plaintiff's limitations. Thus defendant-employer has not rebutted the continuing presumption of disability to which plaintiff is entitled under the Industrial Commission's prior Award until he returns to work by either showing that not only was suitable sedentary work available, but plaintiff was capable of obtaining such work, or that he unjustifiably refused to cooperate with reasonable vocational rehabilitation efforts entitling defendant-employer to suspend benefits due under the involved Award so long as plaintiff unjustifiably refused to cooperate with reasonable vocational rehabilitation efforts. Other than the two periods in June and October of 1995 when benefits were justifiably suspended because of his failure to cooperate with vocational rehabilitation efforts, plaintiff at least minimally cooperated with those efforts through at least the end of November of 1995.
9. Since January 1, 1996 when the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation claims became effective defendant-employer has attempted to assigned several other vocational rehabilitation counselors to plaintiff's case, including George Lentz, who is currently assigned; however, in order to change vocational rehabilitation counselors under the same rules either require that plaintiff consent to the change, which he does not, or file a Motion with the Industrial Commission seeking a change of vocational rehabilitation counselors for good cause, which has not been done; therefore, plaintiff was not obligated to cooperate with the several new vocational rehabilitation counselors that have been assigned to his case since January 1, 1996 without his consent or the Industrial Commission's approval. To the extent that defendant-carrier desires to continue to pursue vocational rehabilitation efforts at this late date; it should move for a change of vocational rehabilitation counselors for good cause, which may well include such factors as whether continued vocational rehabilitation efforts should be pursued at this late date considering the lack of success in the earlier vocational rehabilitation efforts and the extent to which plaintiff is severely limited in his job opportunities, whether any potential vocational rehabilitation counselors assigned has formulated a viable plan for vocational rehabilitation services specifying its goal and the top priority for return to work options and, even if there is a viable plan, whether any time limitations should be placed on continued vocational rehabilitation efforts more than two years after plaintiff had reached maximum medical improvement from his permanent back injury.
10. Because of the credibility issues involved about plaintiff's cooperation with reasonable vocational rehabilitation efforts prior to January 1, 1996 this case was neither brought nor defended without reasonable ground based on stubborn, unfounded litigiousness entitling either party to an award of attorney fees pursuant to the provisions of G.S. 97-88.1.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Other than the two periods from June 2, 1995 to June 18, 1995 and from October 16, 1995 to October 21, 1995 when benefits under the Industrial Commission's prior Award were justifiably temporarily suspended by Administrative Decisions and Orders of Special Deputy Commissioner Amy L. Pfeiffer following separate Form 24 hearings because of plaintiff's failure to cooperate with reasonable vocational rehabilitation efforts, plaintiff has remained totally disabled by the permanent April 14, 1994 back injury that was subject of the Industrial Commission's prior Award herein and has continued to receive weekly benefits under the same Award for his resulting total disability that presumptively continues until he returns to work entitling him to compensation at a rate of $243.74 per week from April 15, 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a change of condition, medical or employment. Defendants have failed in their burden of rebutting the presumption of continuing disability under the Industrial Commission's prior Award by not only showing that suitable sedentary work was available for plaintiff taking into consideration such factors such as his age, education, background and work experience, but that plaintiff could have obtained such work. Although until through at least the end of November of 1995, and with the exception of the two periods in June and October of that year when his benefits were justifiably temporarily suspended for failure to cooperate with reasonable vocational rehabilitation efforts, plaintiff did at least minimally cooperate with the vocational rehabilitation efforts initiated in his case, he was never successful in obtaining employment.
2. Although since January 1, 1996 when the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation claims became effective defendant-carrier has attempted to assign several rehabilitation counselors to his case; in order to change rehabilitation counselors the same rules either require that plaintiff consent to a change, which he did not, or defendant-carrier file a Motion with the Industrial Commission seeking a change for good cause. Therefore, plaintiff was not obligated to cooperate with the several vocational rehabilitation counselors that have been assigned to his case since January 1, 1996 without his consent or the Industrial Commission's approval. Defendant carrier has now made a motion to the Full Commission to allow a change of vocational counselors.
3. For the reasons stated in the above findings of fact this matter was neither brought nor defended without reasonable ground based on stubborn, unfounded litigiousness entitling either party to an Award of attorney fees pursuant to the provisions of G.S. 97-88.1.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Other than the two periods from June 2, 1995 to June 18, 1995 and from October 16, 1995 to October 21, 1995 when the compensation benefits due under the Industrial Commission's prior Award were justifiably temporarily suspended by Administrative Decisions and Orders of Special Deputy Commissioner Amy L. Pfeiffer following separate Form 24 hearings because of plaintiff's failure to cooperate with reasonable vocational rehabilitation efforts, defendants shall pay plaintiff, on account of his continuing total disability, compensation at a rate of $243.74 per week from April 15, 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a change of condition, medical or employment, and to a credit for the weekly compensation benefits that plaintiff has continued to receive under the Industrial Commission's prior Award.
2. As there are no accrued compensation benefits due from which to award a reasonable attorney fee for plaintiff's counsel, defendant-carrier shall forward every fourth compensation check payable under this Award directly to plaintiff's counsel for her fee.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendants shall bear the cost, including as part thereof the expert witness fee previously awarded Dr. Roy for his deposition testimony.
5. It is ordered that the defendants are allowed to change the vocational rehabilitation counselor assigned to plaintiff, and it is further ordered that the plaintiff continue to cooperate with the newly assigned vocational rehabilitation counselor.
 S/ ______________________ PHILLIP A. HOLMES DEPUTY COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
PAH/bjp